

**EXHIBIT**

**14**

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT   DISTRICT OF RHODE ISLAND | ~~AM~~ENDED PROOF OF CLAIM |
|---|---|
| Name of Debtors: **ANNA M. PERRETTA, MICHELE PERETTA, SR.** | Case Number: **10-13531** |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C § 503.*

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property) : **Acqura Loan Services, as servicing agent for American Residential Equities LIX, LLC** | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent: **Acqura Loan Services** **c/o Orlans Moran PLLC** **P.O. Box 962169** **Boston, MA 02196** **Telephone number: (617) 502-4100** | **Court Claim Number: 11** Filed on: 12/16/2010 |
| Name and Address where payments should be sent( if different from above): **Acqura Loan Services** **Post Office Box 117622** **Carrollton, TX 75007** Telephone number: **972-7115-1010** | ☐ Check this box if you are aware that anyone else has filed a proof of claim. Attach a copy of statement giving particulars. ☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:** **$1,388,033.78** If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. ☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** Specify the priority of the claim. |
| **2. Basis for Claim:** <u>Mortgage note</u> (See instruction #2 on reverse side) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **3. Last four digits of any number by which creditor identifies debtor: 4059** **3a. Debtor may have scheduled account as:** _____ (See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507(a)(4). |
| **4. Secured Claim (See instruction #4 on reverse side.)** Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. **Nature of property or right of setoff:** ☒ Real Estate  ☐ Motor Vehicle  ☐ Other **Describe: 380 Pippin Orchard Road, Cranston, RI 02921** **Value of Property:**     **Annual Interest Rate 12.49%** **Amount of arrearage and other charges as of time case filed included in secured claim,** **if any: $333,432.19   Basis for perfection: Mortgage** **Amount of Secured Claim: $1,388,033.78 Amount Unsecured: $**_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C.§507(a) (7). ☐ Taxes or penalties owed to governmental units – 11 U.S.C.§507 (a)(8). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side) DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. If the documents are not available, please explain: | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(_). **Amount entitled to priority:** $_____ *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| Date **February 9, 2011** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): **/s/ John T. Precobb** **Attorney for Acqura Loan Services** | **FOR COURT USE ONLY** |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§152 and 3571*

*File Number: 611.0016*

## STATEMENT OF TOTAL DEBT CLAIM

**In the case of:**
ANNA M. PERRETTA
MICHELE PERETTA, SR.
        **Debtor(s)**

**Chapter** 13
**Case Number** 10-13531

For claim of total mortgage debt due Acqura Loan Services, as servicing agent for American Residential Equities LIX, LLC relative to the property located at 380 Pippin Orchard Road, Cranston, RI 02921.

| | |
|---|---|
| Principal Balance | $971,750.00 |
| Interest @ 12.490% from 01/01/08 to 08/25/10 | $326,014.38 |
| Escrow Advance | $69,852.48 |
| Late Charges | $17,800.66 |
| Foreclosure Attorney Fees and Costs (7/1/10 Attorney Fee $600.00, 7/13/10 Certified Mail $93.45, 7/13/10 Recording – Notice of Intent to Foreclose $12.00, 7/15/10 Municipal Lien Certificate $25.00, 8/10/10 Title Update $44.50, 8/13/10 Sale Cost – Publication $1,541.31, 8/26/10 Sale Cost – Auctioneer $300.00) | $2,616.26 |
| **TOTAL** | **$1,388,033.78** |

## STATEMENT OF ARREARAGE CLAIM

**In the case of:**
ANNA M. PERRETTA                    Chapter 13
MICHELE PERETTA, SR.                Case Number 10-13531
                    **Debtor(s)**

For arrearage claim of Acqura Loan Services, as servicing agent for American Residential Equities LIX, LLC relative to the property located at 380 Pippin Orchard Road, Cranston, RI 02921.

As of September 1, 2010, Acqura Loan Services, as servicing agent for American Residential Equities LIX, LLC must receive the current monthly mortgage obligation of **$10,793.63**.

**\*\* Please send payment to:**
**Acqura Loan Services Post Office Box 117622, Carrollton, TX 75007**

| | |
|---|---|
| 29   Payment(s) @   $10,793.63   February 1, 2010 to August 1, 2010 | $313,015.27 |
| Late Charges | $17,800.66 |
| Foreclosure Attorney Fees and Costs (7/1/10 Attorney Fee $600.00, 7/13/10 Certified Mail $93.45, 7/13/10 Recording – Notice of Intent to Foreclose $12.00, 7/15/10 Municipal Lien Certificate $25.00, 8/10/10 Title Update $44.50, 8/13/10 Sale Cost – Publication $1,541.31, 8/26/10 Sale Cost – Auctioneer $300.00) | $2,616.26 |

**ARREARAGE AMOUNT**                    **$333,432.19**

*This loan is an escrowed loan*



2006118206ES50 Bk: 3670 Pg: 108
RECORDED Cranston, RI   Pg 1 of 23
11/02/2006 16:25:03   MTG

———————————————— [Space Above This Line For Recording Data] ————————————————

## MORTGAGE

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   OCTOBER 25, 2006   , together with all Riders to this document.
(B) "Borrower" is   MICHELE PERRETTA, SR AND ANNA M PERRETTA HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is   ZURICH MORTGAGE SOLUTIONS, LLC

Lender is a   FLORIDA LIMITED LIABILITY COMPANY   organized
and existing under the laws of   FLORIDA
Lender's address is   100 S. DIXIE HWY, #204, WEST PALM BEACH, FLORIDA 33401
Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated   OCTOBER 25, 2006
The Note states that Borrower owes Lender   NINE HUNDRED SEVENTY-ONE THOUSAND SEVEN HUNDRED FIFTY AND 00/100   Dollars (U.S. $ 971,750.00   )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   NOVEMBER 1, 2036   .
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Planned Unit Development Rider | | |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | | |
| ☐ 1-4 Family Rider | ☐ Second Home Rider | | |
| ☐ Condominium Rider | ☒ Other(s) [specify]   INTEREST ONLY RIDER, PREPAYMENT RIDER TO SECURITY INST | | |

RHODE ISLAND–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)                    Page 1 of 14                    DocMagic eForms 800-649-1362
                                                                              www.docmagic.com

*M.P.*
*A.M.P.*

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the

| COUNTY | of | PROVIDENCE | : |
|--------|----|-----------|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)     Page 2 of 14     DocMagic

*M.C.  A.M.P*

which currently has the address of    380 PIPPIN ORCHARD ROAD    [Street]

CRANSTON    , Rhode Island    02921    ("Property Address"):
[City]    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT.    DocMagic eForms 800-649-1362
Form 3040 1/01 (rev. 11/02)    Page 3 of 14.    www.docmagic.com

*M.C. A.M.P*

be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)
Page 4 of 14

DocMagic
www.docmagic.com

Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties,

RHODE ISLAND–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)                    Page 6 of 14                    DocMagic *eForms* 800-649-1362
                                                                              www.docmagic.com

retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action

RHODE ISLAND–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)   Page 6 of 14   DocMagic eForms 800-649-1362
www.docmagic.com

under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

RHODE ISLAND–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)                    Page 7 of 14                    DocMagic ℰℱℴℴℴℴℴ 800-649-1362
                                                                              www.docmagic.com

*M.C.*
*A.M.P.*

2C0811820800540 Bk: 3920 Pg: 173
RECORDED Cranston, RI  Pg 8 of 23
11/03/2008 16:26:05  KTC

11. Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 20 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver.  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of

2006/10200000050 Bk: 3528 Pg: 173
RECORDED Cranston, RI  Pg 9 of 23
11/07/2006 15:28:00  MTG

payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)    Page 9 of 14

DocMagic eFerms 800-649-1362
www.docmagic.com

20061192602bf00 Bk: 2520 Pa: 174
RECORDED Cranston, RI  Pa 10 of 23
11/02/2006 15:25:00  MTG

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev.,11/02)                Page 10 of 14

DocMagic CForms 800-649-1362
www.docmagic.com

can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

RHODE ISLAND–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)                    Page 11 of 14          DocMagic eForms  800-649-1362
                                                                      www.docmagic.com

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. No Outstanding Automatic Orders in Domestic Relations Cases. Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

25. Homestead Estate. If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)                    Page 12 of 14                    DocMagic 800-649-1362
                                                                              www.docmagic.com

Date: OCTOBER 25, 2006

Property Address:  380 PIPPIN ORCHARD ROAD, CRANSTON, RHODE ISLAND
02921

EXHIBIT "A"

LEGAL DESCRIPTION

A.P.N. # :

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MICHELE PERRETTA, SR          -Borrower

_____ (Seal)
ANNA M PERRETTA               -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness:                      Witness:

_____       _____

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)                    Page 13 of 14

————————————————— [Space Below This Line For Acknowledgment] —————————————————

State of Rhode Island
County of  PROVIDENCE

In  Cranston                    In said County, on the   25th              day of
                          , before me personally appeared
MICHELE PERRETTA, SR, ANNA M PERRETTA

                                    , each and all to me known, and known by me to be
the party(ies) executing the foregoing instrument, and he/she/they acknowledged said instrument, by him/her/them
executed to be his/her/their free act and deed.

Signature

Albert E. Meola Jr
Printed or Typed Name

(Seal)                          My commission expires: 10/27/06

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       DocMagic €Rama 800-649-1362
Form 3040 1/01 (rev. 11/02)                    Page 14 of 14              www.docmagic.com

M.C.

BK: 3520 Pg: 195
RECORDED Cranston, RI  Pg 16 of 23
11/22/2006 16:28:00  MTG

**EXHIBIT A**

That certain lot or parcel of land situated on the northeasterly side of Pippin Orchard Road in the City of Cranston, County of Providence, State of Rhode Island, bounded and described as follows:

Beginning at a point in the northeasterly line of Pippin Orchard Road which point is the southerly corner of the property conveyed herein, which point is also the westerly corner of land now or formerly of J.L. Lentini, Jr.; said point of beginning is marked by a drill hole at the end of a stone wall; thence running in a northeasterly direction, a distance of Eight hundred Sixty-One and 00/100 (861.00) feet, bounding northeasterly on said Lentini land, to an iron pipe at land now or formerly of Domeaico Cimieno; thence turning an interior angle of 78 degrees 42' 47" and running in a northwesterly direction, a distance of one hundred five and 39/100 (105.39) feet, to an iron pipe; thence continuing in a northwesterly direction, a distance of Eighty-three and 39/100 (83.39) feet to an iron pipe; said last two courses bounding on said Cimieno land; thence turning an interior angle of 104 degrees 47' 3" and running in a southwesterly direction, a distance of Two hundred Ninety-four and 15/100 (294.15) feet to an iron pipe; thence turning and running in a southwesterly direction, a distance of Five hundred Forty-nine and 51/100 (549.51) feet to an iron pipe set in the northeasterly line of Pippin Orchard Road. Said last two courses bounded on land now or formerly of Peter and Anna Buonacorsi; thence turning an interior angle of 84 degrees 45' 1" and running in a southeasterly direction along Pippin Orchard Road, a distance of One hundred Thirty-three and 72/100 (133.72) feet to a point; thence continuing along Pippin Orchard Road a distance of Sixty-Six and 49/100 (66.49) feet to the point and place of beginning.

Said parcel is a portion of Lot 14 on Assessor's map 33, City of Cranston, Rhode Island.

For mortgagors title see Deed dated January 9, 1984 and recorded Book 494 Page 614

2006110160DESS0 Bk: 2529 Pg: 191
RECORDED Cranston, RI   Pg 17 of 23
11/02/2006 12:25:00   MTG

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

Property Address: 380 PIPPIN ORCHARD ROAD, CRANSTON, RHODE ISLAND
02921

THIS ADDENDUM is made this 25th day of OCTOBER, 2006             , and is
incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date
as this Addendum executed by the undersigned and payable to ZURICH MORTGAGE SOLUTIONS,
LLC, A FLORIDA LIMITED LIABILITY COMPANY                          (the "Lender").

THIS ADDENDUM supplements the Security Instrument and supersedes Section 4(C) of the Rider.

**INTEREST-ONLY PAYMENTS**
     The Note provides that during the first  60    months of the loan (the "Interest-Only Period"), I will
make monthly payments in the amount sufficient to pay interest only as it accrues on the unpaid principal
balance.  Thereafter, for the remaining  300   months of the loan, I will make monthly payments in an
amount sufficient to repay fully the unpaid principal balance of the Note as of the end of the Interest-Only
Period.

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
     (C)    Calculation of Changes
     Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX
AND  000/1000                       percentage point(s) (      6.000  %)
to the current Index for the Change Date.  The Note Holder will then round the result of this addition to the
nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D), this
rounded amount will be my new interest rate until the next Change Date occurs.
     During the Interest-Only Period, the Note Holder will determine the amount of the monthly payment
that would be sufficient to pay accrued interest on the unpaid principal balance.  This will be the amount of
my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period.
However, if I make a voluntary prepayment of principal during the Interest-Only Period, my payment
amount for subsequent payments will be reduced to the amount necessary to pay the required interest at the
then current interest rate on the lower principal balance.
     At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will
determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal
balance that I will owe in substantially equal monthly payments over the remaining term of the Note. The
result of this calculation will be the new amount of my monthly payment.

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
#2004 DOCMAGIC, INC.
01/14/04                              Page 1 of 2

DocMagic eForms  800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Addendum to Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
MICHELE PERRETTA, SR  -Borrower          ANNA M PERRETTA        -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                -Borrower

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
©2004 DOCMAGIC, INC.
01/14/04                    Page 2 of 2

### ADJUSTABLE RATE RIDER
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*)
- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 25th day of OCTOBER, 2006 , and is incorporated into and shall he deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to ZURICH MORTGAGE SOLUTIONS, LLC, A FLORIDA LIMITED LIABILITY COMPANY
("Lender") of the same date and covering the property described in the Security Instrument and located at:

380 PIPPIN ORCHARD ROAD, CRANSTON, RHODE ISLAND 02921

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of     12.490 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A)    Change Dates
The interest rate I will pay may change on the 1st    day of NOVEMBER, 2008 , and on that day every 6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B)    The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER—LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family—Fannie Mae MODIFIED INSTRUMENT
Form 3138 7/01                        Page 1 of 3

DocMagic *eForms*  800-649-1362
www.docmagic.com

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 000/1000                      percentage points (    6.000   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.490  % or less than   11.490  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE  AND  000/1000                      percentage points (    1.000   %) from the rate of interest I have been paying for the preceding    6     months. My interest rate will never be greater than 19.490  %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)·   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family–Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                              Page 2 of 3

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
MICHELE PERRETTA, SR   -Borrower

_____ (Seal)
ANNA M PERRETTA          -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)
Single Family–Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                      Page 3 of 3

IC9411025900853 Bk: 3529 Ps: 196
RECORDED Cranston, RI   Pg 22 of 23
11/03/2006 18:28:00  RTG

## PREPAYMENT RIDER

Date: OCTOBER 25, 2006

Borrower(s): MICHELE PERRETTA, SR, ANNA M PERRETTA

THIS PREPAYMENT RIDER (the "Rider") is made this 25th   day of OCTOBER   ,
2006               , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
ZURICH MORTGAGE SOLUTIONS, LLC, A FLORIDA LIMITED LIABILITY
COMPANY
("Lender"). The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

380 PIPPIN ORCHARD ROAD, CRANSTON, RHODE ISLAND 02921

[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.   PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

5   . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note. However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.
If the Note provides for changes in the interest rate, my partial Prepayment may
reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment. However, any reduction due to my partial Prepayment may be offset
by an interest rate increase.

RHODE ISLAND PREPAYMENT RIDER
6/03                                    Page 1 of 2'          DocMagic eFarms 800-649-1362
                                                              www.docmagic.com

200611032000558 BK: 1520 Pg: 187
RECORDED Cranston, RI  Pg 23 of 23
11/02/2006 13:23:03  MTG

If within TWELVE      ( 12     ) months from the date the loan is made
I make a full Prepayment, I will pay a Prepayment charge in an amount equal to
TWO          percent (      2.000   %) of the balance due at the date of the
pay-off.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Rider.

_____ (Seal)        _____ (Seal)
MICHELE PERRETTA, SR  -Borrower        ANNA M PERRETTA        -Borrower

_____ (Seal)        _____ (Seal)
              -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
              -Borrower                              -Borrower

RHODE ISLAND PREPAYMENT RIDER          Page 2 of 2              DocMagic eForms  800-649-1362
6/02                                                            www.docmagic.com

Fax:4013853127 Aug 10 2009 10:19 P.20

WHEN RECORDED MAIL TO:
ZURICH MORTGAGE SOLUTIONS, LLC
100 S. DIXIE HWY, #204
WEST PALM BEACH, FLORIDA 33401

```
200709140000030 Bk: 3745 Pg: 77
RECORDED Cranston, RI Pg 1 of 1
09/14/2007 09:36:00 ASGT MTG
```

Loan Number: P1000243
Servicing Number:

[Space Above This Line For Recording Data]

# Assignment of Mortgage

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to AMERICAN RESIDENTIAL EQUITIES, 848 BRICKELL AVE. THE PENTHOUSE, MIAMI, FL. 33131

all beneficial interest under that certain Mortgage dated OCTOBER 25, 2006    executed by
MICHELE PERRETTA, SR AND ANNA M PERRETTA HUSBAND AND WIFE

, Mortgagor

and recorded as Instrument No.    concurrently herewith on 11-2-2006 in book 3520 ,
page 165 , of Official Records in the County Recorder's office of PROVIDENCE    County, 165
RHODE ISLAND    Recorded in said mortgage at book 3520 page, describing land therein as
SEE LEGAL DESCRIPTION ~~ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT A~~.

Commonly known as: 380 PIPPIN ORCHARD ROAD, CRANSTON, RHODE ISLAND 02921

Assessor's Parcel #:
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage. The original principal amount due under this note(s) is $ 971,750.00 .

ZURICH MORTGAGE SOLUTIONS, LLC, A FLORIDA LIMITED LIABILITY COMPANY

By: _____    By: _____

Name: Mark Kreisler    Name: _____

Title: Director    Title: _____

_____    _____

Attest    Attest

STATE OF ~~RHODE ISLAND~~ Florida

COUNTY OF ~~PROVIDENCE~~ Palm Beach SS.
On 11/24/06 before me,
Justin Piasecki
personally appeared
Mark Kreisler

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument. WITNESS my hand and official seal.

(This area for Corporate Seal)

Signature _____
Justin Piasecki
Name (Typed or Printed)
Notary Public in for said State

(This area for official notarial seal)

JUSTIN PIASECKI
Notary Public - State of Florida
My Commission Expires May 11, 2010
Commission # DD 551684
Bonded By National Notary Assn.

DocMagic eForms 800-649-1362
www.docmagic.com

ASSIGNMENT OF MORTGAGE
04/05/06

03593416023

Corpl.xsm

Case 1:10-bk-13531   Doc 111-1   Filed 06/20/11   Entered 06/20/11 15:08:23   Desc
Exhibit 14   Page 28 of 37   Fax:4013855121   Aug 10 2009 10:19   P.21

Case 1:10-bk-13531   Claim 11-1 Part 3   Filed 02/09/11   Desc Assignment 1   Page 2 of 2

RECORDING REQUESTED
AND PREPARED BY:

American Residential Equities
848 Brickell Avenue, Penthouse
Miami, FL 33131
LISETTE DE PADUA

AND WHEN RECORDED
MAIL TO:

Property Address: 380 Pippin Orchard Road, Cranston, RI, 02921.

_____SPACE ABOVE FOR RECORDER'S USE_____

Loan No.: ARE10PER380

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, American Residential Equities, a Delaware limited liability company having an address of 848 Brickell Avenue, Penthouse, Miami, Florida 33131, by these presents does convey, grant, bargain, sell, assign, transfer and set over to:

GMAC Mortgage, LLC
f/k/a
GMAC Mortgage Corporation , Assignee,
a _____ corporation, having an address of _1100 Virginie Dr. Fort Washington, PA 19054_
the described Mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for $971750 is recorded in the State of Rhode Island, County of Providence, Official Records, dated 10/25/2006 and recorded on ___11-2-2006___, as Instrument No. _____, in Book No. __3520__, at Page _165_.

Original Mortgagor: MICHELE PERRETTA AND ANNA M. PERRETTA
Original Mortgagee: ZURICH MORTGAGE SOLUTIONS, LLC

American Residential Equities

By: _____
Jeffrey Kirsch, Authorized Signatory

WITNESS: _____     _____
Steven Van Horn                        Andrea Lutchman

State of FLORIDA              )
County of MIAMI-DADE          ) ss.

On _11/14/06_, before me, Lisette de Padua, a Notary Public, personally appeared Jeffrey Kirsch, Authorized Signor of American Residential Equities, who is personally known to me to be the person whose name is subscribed to the capacity and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
Lisette de Padua, Notary Public

Jacquelyn Lisette de Padua
Comm# DD0197487
Expires 3/27/2007
Bonded thru (800)432-4254
Florida Notary Assn., Inc

RECORDING REQUESTED
AND PREPARED BY:

American Residential Equities
848 Brickell Avenue, Penthouse
Miami, FL 33131
LISETTE DE PADUA

AND WHEN RECORDED
MAIL TO:

200709140000040 Bk: 3745 Pg: 78
RECORDED Cranston, RI  Pg 1 of 1
09/14/2007 09:36:00  ASGT MTG

Property Address: 380 Pippin Orchard Road, Cranston, RI, 02921.

_____ SPACE ABOVE FOR RECORDER'S USE_____

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, American Residential Equities, a Delaware limited liability company having an address of 848 Brickell Avenue, Penthouse, Miami, Florida 33131, by these presents does convey, grant, bargain, sell, assign, transfer and set over to:

GMAC Mortgage, LLC
f/k/a
GMAC Mortgage Corporation                              , Assignee,
a _____ corporation, having an address of 1100 Virginia Dr. Fort Washington, PA 19034
the described Mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for $971750 is recorded in the State of Rhode Island, County of Providence, Official Records, dated 10/25/2006 and recorded on 11-2-2006 , as Instrument No. _____ , in Book No. 3520 , at Page 165 .

Original Mortgagor: MICHELE PERRETTA AND ANNA M. PERRETTA
Original Mortgagee: ZURICH MORTGAGE SOLUTIONS, LLC

American Residential Equities

By: _____
     Jeffrey Kirsch, Authorized Signatory

WITNESS:

_____        _____
Steven Van Horn                         Andrea Lutchman

State of FLORIDA           )
County of MIAMI-DADE       ) ss.

On 11/14/06 , before me, Lisette de Padua, a Notary Public, personally appeared Jeffrey Kirsch, Authorized Signor of American Residential Equities, who is personally known to me to be the person whose name is subscribed to the capacity and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
Lisette de Padua, Notary Public

Jacquelyn Lisette de Padua
Comm# DD0197487
Expires 3/27/2007
Bonded thru (800)432-4254
Florida Notary Assn., Inc

201011100130750 Bk:LR4289 Pg:19
RECORDED Cranston,RI 1/1
11/10/2010 01:24:02 PM ASGT MTG

Pamela A. Perrot
American Residential Equities
848 Brickell Avenue, Penthouse
Miami, FL 33131

*611.0016*

Property Address: 380 PIPPIN ORCHARD ROAD, CRANSTON, RHODE ISLAND 02921.

_____ SPACE ABOVE FOR RECORDER'S USE_____

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, GMAC Mortgage, LLC (f/k/a GMAC Mortgage Corporation), a Delaware limited liability company having an address of 500 Enterprise Road, Suite 150, Horsham, PA 19044, by these presents does convey, grant, bargain, sell, assign, transfer and set over to:

American Residential Equities LIX, LLC

, Assignee,

a Delaware limited liability company, having an address of 848 Brickell Avenue, Penthouse, Miami, Florida 33131, the described Mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon. Said Mortgage dated October 25, 2006 for $971,750.00 is recorded in the State of Rhode Island, County of Providence, on November 2, 2006 in Book No. 3520 at Page 165.

Original Mortgagor: MICHELLE PERRETTA AND ANNA M. PERRETTA

Original Mortgagee: ZURICH MORTGAGE SOLUTIONS, LLC

Date: May 4, 2010

ASSIGNOR:

GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation        ·  Witness:

By: _____                              Name: _David a Harriott_
Its: _Jeffrey Stephan_
_Limited Signing Officer_

Witness:

By: _Shirley Eads_

Return to:
ORLANS MORAN
Attorneys and Counselors at Law
P.O. Box 5041
Troy, MI 48007-5041

STATE OF _Pennsylvania_ )
                         ) SS
COUNTY OF _Montgomery_ )

On _5/5_ , 2010, before me, _Susan Turner_ , a notary public for and within the said county, personally appeared, _Jeffrey Stephan_ ✱, of GMAC Mortgage, LLC (f/k/a GMAC Mortgage Corporation) whose address is 500 Enterprise Road, Suite 150, Horsham, PA 19044, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/ her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal:

By: _____
Notary Public:
My commission Expires:

COMMONWEALTH OF PENNSYLVANIA,
NOTARIAL SEAL
Susan Turner, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Nov. 9, 2013
Member, Pennsylvania Association of Notaries

✱ Limited Signing Officer

# ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

OCTOBER 25, 2006          WEST PALM BEACH          FLORIDA
[Date]                               [City]                               [State]

380 PIPPIN ORCHARD ROAD, CRANSTON, RHODE ISLAND 02921
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $971,750.00     (this amount is called "Principal"), plus interest, to the order of Lender. Lender is ZURICH MORTGAGE SOLUTIONS, LLC, A FLORIDA LIMITED LIABILITY COMPANY
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     12.490   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.

I will make my monthly payments on the  1st   day of each month beginning on  DECEMBER 1 , 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on NOVEMBER 1, 2036        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 100 S. DIXIE HWY., #204, WEST PALM BEACH, FLORIDA 33401
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ 10,363.54          . This amount may change.          ** See attached Interest Only Note Addendum.

**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)–Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 1 of 5

Form 3520 1/01
DocMagic *@Remus* 800-449-1362
*www.docmagic.com*

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the 1st day of NOVEMBER, 2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 000/1000 percentage points ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 13.490 % or less than 11.490 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 19.490 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

MULTISTATE ADJUSTABLE RATE NOTE—LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)—Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 2 of 5

Form 3520 1/01
DocMagic *eTorms* 800-649-1362
www.docmagic.com

*M.C.   A.M.P.*

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5 . 000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

---

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                     Page 3 of 5

Form 3520 1/01
DocMagic eForms 800-649-1362
www.docmagic.com

*M.G.   A.M.P*

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 4 of 5

Form 3520 1/01
DocMagic *eForms* 800-645-1362
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MICHELE  PERRETTA,  SR     -Borrower

_____ (Seal)
ANNA  M  PERRETTA            -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 5 of 5

Form 3520 1/01
DocMagic *CEIUMS*  800-649-1362
www.docmagic.com

Borrower Name:       MICHELE PERRETTA
Original Beneficiary: ZURICH MORTGAGE SOLUTIONS, LLC
Loan Amount:         $971,750.00
Dated Date:          10/25/2006
Property Address:    380 PIPPIN ORCHARD ROAD, CRANSTON, RI 02921
Loan No.:            ARE10PER380

### ALLONGE TO NOTE

PAY TO THE ORDER OF:

Assignee: _____, a _____
corporation

(without recourse)

BY:

Assignor: Zurich Mortgage Solutions, LLC, a Florida limited liability company

By: American Residential Equities (its Attorney-In-Fact by virtue of a Limited Power of
    Attorney)

By: _____
    Jeffrey L. Kirsch, Authorized Signatory

UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

In Re:                                          Chapter 13
Anna M. Perretta                                Case No. 10-13531
Michele Peretta, Sr.                            Honorable Arthur N. Votolato

        Debtors

_____/

### CERTIFICATE OF SERVICE

I, John T. Precobb of Orlans Moran PLLC, do hereby certify that on February 9, 2011, I caused to be served a copy of the Amended Proof of Claim on the service list below by having a copy of same mailed by first class mail, postage prepaid or other method specified on service list.

Signed under the penalties of perjury, this February 9, 2011

/s/ John T. Precobb
John T. Precobb, Esq. RI# 5698
Orlans Moran PLLC
P.O. Box 962169
Boston, MA 02196
Phone: (617) 502-4100
Fax: (617) 502-4101
Email: bankruptcy@orlansmoran.com
File Number: 611.0016

VIA US MAIL
Anna M. Perretta
Michele Peretta, Sr.
380 Pippin Orchard Road
Cranston, RI 02921

VIA ECF
Russell D. Raskin on behalf of Debtor
Gary L. Donahue, U.S. Trustee
John Boyajian, Chapter 13 Trustee