```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x

In re:                                   :

ANNA M. PERRETTA                         :   BK No. 10-13531
MICHELE PERRETTA, SR.                        Chapter 13
          Debtors

- - - - - - - - - - - - - - - - - -x
```

### DECISION AND ORDER GRANTING RELIEF FROM STAY

APPEARANCES:

    John T. Precobb, Esq.
    Attorney for American Residential Equities, LIX LLC
    ORLANS MORAN PLLC
    P.O. Box 962169
    Boston, MA 02196

    Russell D. Raskin, Esq.
    Attorney for the Debtors
    RASKIN & BERMAN
    116 East Manning Street
    Providence, RI 02906

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

Heard on secured creditor American Residential Equities, LIX LLC's ("LIX") motion for leave to foreclose a mortgage on real property owned by Debtors Michele and Anna Perretta ("The Debtors") who contend, based on alleged chain of title questions, that LIX lacks standing to bring such a motion. The Debtors' objection also raises the issue of whether a secured creditor has standing to challenge the validity of a mortgage assignment, where the mortgagor is neither a party to, nor a third party beneficiary of that assignment. For the reasons discussed below, LIX's request for relief from stay is **GRANTED**.

## BACKGROUND AND FACTS

The Debtors own property at 380 Pippin Orchard Road in Cranston, Rhode Island. On July 2, 2004, the Debtors filed a Chapter 11 case which was later converted to one under Chapter 7, and in May, 2005, the Debtors received a Chapter 7 discharge. The following month, the recently discharged Debtors filed again, this time, under Chapter 13. That case was dismissed in March, 2006 for failure to make plan payments. On October 25, 2006, the Debtors executed a note and mortgage granting a security interest in their property to Zurich Mortgage Solutions, LLC ("Zurich"). On November 28, 2006, the mortgage was assigned by Zurich to American Residential Equities ("ARE"). On November 14, 2007, two weeks

1

prior to the Zurich assignment, ARE assigned its mortgage to GMAC. At the time, GMAC was the loan servicer for ARE. (Transcript, June 21, 2011, 16:9). On September 14, 2007, the assignments by Zurich to ARE, and ARE to GMAC, were recorded. In April, 2010, the Perrettas filed a second Chapter 13 case, which was dismissed on June 25, 2010 "without prejudice." In August, 2010, the Perrettas filed this Chapter 13 case.[1]

GMAC transferred the mortgage to American Residential Equities LIX, LLC ("LIX") via an assignment recorded on November 10, 2010. LIX was one of a number of LLCs formed by ARE, and ARE was authorized to act on LIX's behalf. (Transcript, 6/21/11, 39:1-4). All of the assignments were *ceremoniously* made through the use of *allonges*[2], rather than by just signing the note itself.[3]

---

[1] While "Chapter 20" is a well-known strategy in the consumer bankruptcy lexicon, in this Court's memory, these Debtors are now the undisputed record holders, who have given new meaning to the term "insolvency estate planning." This will now be referred to as our first "Chapter 57" case.

[2] "A slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary 88 (9th Ed. 2009).

[3] Hopefully, this unnecessary excursion into the world of "allonges" achieved some benefit for the ego of whomever felt the need to inflict that argument upon us. The allonge issue was only a time-consuming distraction that we hope not to hear again

In this case, the Debtors listed Acqura Loan Services ("Acqura") on Schedule D – Creditors Holding Secured Claims, as the mortgagee of an account opened on October 25, 2006.  Acqura, as the servicer of record for LIX (Transcript, June 22, 2011, 17:18-21), filed both a Proof of Claim and an Amended Proof of Claim.  On August 19, 2010, the instant Motion for Relief from Stay was filed by LIX.

### DISCUSSION

The standard for determining whether a movant (here, the creditor), has standing to seek relief from stay, is a lenient one. The creditor need only show that it has "a colorable claim to property of the estate." *In re Marron,* 455 B.R. 1, 2 (Bankr. Mass. 2011)(*citing Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 32 (1st Cir. 1994)). At the hearing, the only witness, Pamela A. Perrot, "Senior Asset Control [person]" for LIX, testified at length about: the assignments of the mortgage from Zurich to ARE, ARE to GMAC, and GMAC to LIX; the (overly discussed) industry-wide practice of the use of allonges; and the record-keeping practices of ARE and LIX.  Ms. Perrot's testimony, together with the recording of the assignments, easily establishes that LIX has at least a colorable claim against the bankruptcy estate.

Further, notwithstanding the Debtors' argument that because of alleged defects in the formalities of the assignments, only Zurich could prove a claim, the Debtors' inclusion of Acqura's claim on their Schedule D is a clear admission that Acqura is in fact the holder of a claim.  Acqura's Proof of Claim and Amended Proof of Claim, both name Acqura as "servicing agent for American Residential Equities LIX, LLC"(Ex. 13, 14), and Ms. Perrot has identified Acqura as LIX's servicing agent.  Since the Debtors concede, through their actions, that Acqura has a claim, and since LIX agrees that Acqura is an agent of LIX, it is hard to imagine how or why LIX lacks standing to assert this claim.

Nonetheless, in support of their problematic objection, the Debtors point to a number of alleged deficiencies in the signing or execution of the various allonges in ARE's "collateral file."  It is unnecessary to review the purported deficiencies here, as they have been fully addressed and explained by Ms. Perrot.  Further, "[a]n assignment of mortgage *substantially following the form* entitled 'Assignment of Mortgage,' shall, when duly executed, have the force of granting" title and interest in the mortgage to the assignee."  R.I.G.L. §34-11-24.  Here, the form was substantially followed, regardless of whether paper clips, staples, or Scotch tape

were used, or whether duplicate allonges existed for the convenience of the servicing agents of ARE and LIX.

The Debtors' position here is similar to the arguments advanced in the "MERS cases"[4] where debtors seeking to avoid foreclosure of their home mortgages argue that mortgage servicing companies lack standing to assert the Statutory Power of Sale.  To date, this argument has not been accepted in the Rhode Island state courts. *See, e.g.: Kriegel v. Mortgage Elec. Registration Sys.,* 2011 R.I. Super. LEXIS 134 (R.I. Super. Ct. 2011); *Porter v. First NLC Fin. Servs. LLC,* 2011 R.I. Super. LEXIS 45 (R.I. Super. Ct. 2011); *Bucci v. Lehman Bros. Bank,* R.I. Super. 2009 LEXIS 110 (R.I. Super. Ct. 2009).  The Perrettas' argument falls within the same category as that in the MERS cases, i.e., they are not a party to any of the assignments, nor are they third party beneficiaries of the assignments, and therefore it is *they* who lack standing to challenge these assignments.  *See: Cosajay v. MERS,* C.A. No. 10-442M (D.R.I. June 23, 2011); *Fryzel v. MERS,* C.A. No. 352M (D.R.I. June 10,

---

[4] MERS, an acronym for Mortgage Electronic Recording Systems, Inc., acts as an electronic clearinghouse and is the named mortgagee on almost two-thirds of newly originated residential mortgages in the U.S.  While this process supposedly has simplified the recording of assignments in the residential lending industry, MERS can, and does, make it difficult for homeowners to identify a party with whom they can negotiate their mortgage terms. *MERS*, 32 Cardozo L. Rev. 1621, 1624 (2011).

2011). Predictably, no party to the assignments has challenged the validity of the assignments.

Unlike many of the plaintiffs in the MERS cases, the Debtors here cannot claim to have experienced any difficulty in ascertaining the party with whom they could negotiate their loan. Not only did the Debtors list Acqura (servicing agent of LIX) in their Schedule D, but all of the assignments were duly recorded with the City of Cranston Recorder of Deeds, thereby placing the Debtors, and the world, on constructive notice of the identity of the assignees. These assignments were recorded, not in the name "MERS," as many are, but in the names of the relevant creditors. No one has questioned any of the assignments, and the Perrettas did not speak up until they were faced with the present motion for relief from stay, and the possibility that they might actually have to pay somebody on this mortgage loan.

While the Debtors have not specifically alleged that they do not owe their loan balance to some entity, they just hope to void all assignments subsequent to the original mortgage to Zurich because, conveniently, Zurich is now defunct. If, however, the Perrettas were genuinely confused about who to pay, they could have sought a declaratory judgment in state court, or could have resolved the issue through an interpleader action in this Court.

The Perrettas are not so innocently confused, and they were not confused when they executed and filed their Schedule D. The testimony of Ms. Perrot confirms their admission that LIX, through its servicing agent, Acqura, is the holder of this mortgage.

In conclusion, I find that LIX has established a colorable claim to property of the estate, and thus has standing to request relief from stay. Other than standing, the Debtors have not raised any objection to the motion,[5] and based upon the foregoing discussion, their objection to the Motion is overruled. The Motion for Relief from Stay is **GRANTED.**

Entered:

                                           Arthur N. Votolato
                                           U.S. Bankruptcy Court

Entered on docket: 12/16/11

---

[5] Notwithstanding the entry of this order granting Relief from Stay, the Debtors may, of course, pursue any state court remedies available to them, on the merits of their opposition to foreclosure.

7